UNITED STATES DISCRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JHEN P. GARCIA<br><br>      Plaintiff,<br><br>-against -<br><br>35 W. 9TH OWNERS CO-OP, et al.,<br><br>      Defendants. | 1:24-cv-02482 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

  Jhen Garcia ("Plaintiff"), proceeding *pro se*, brings this action against 35 W. 9th Owners Co-op ("35 West 9th Street"), Maxwell-Kates, Arabella Bowen, and Joshua Holzer (collectively "Defendants") for claims of employment discrimination and retaliation pursuant to 42 U.S.C. Section 1981, the Fair Labor Standards Act ("FLSA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Laws (" NYCHRL"), and New York Labor Law Section 215 ("NYLL § 215"). *See* ECF No. 1 ("Complaint" or "Compl."). Plaintiff's allegations include race-, ancestry-, and ethnicity-based discrimination and denial of overtime pay. *See id.* Defendants subsequently filed a motion to compel arbitration. ECF No. 26. For the reasons stated below, the motion to compel arbitration is **DENIED**.

BACKGROUND

  **I.**  **Factual History**

  Plaintiff began working for 35 W. 9th Owners Co-op and Maxwell-Kates as a doorman in September of 2022. *See* Compl. at 5. Plaintiff alleges that he was treated unfairly, with management forcing him to work extra hours without pay, speaking down to him, and harassing him because of his Dominican decent. *See id.* at 5–6. Plaintiff specifically alleges that management

1

promised to promote him to super after the retirement of Plaintiff's supervisor, but ultimately they selected an outside hire. *See id.* at 5.

Plaintiff alleges that this unfavorable treatment was the result of management's animus toward his Dominican heritage. *See id.* Plaintiff alleges that management called Dominican employees "lazy." *Id.* Plaintiff states that on February 28, 2023, a member of management burst into the unit Plaintiff was in and accosted him, making unspecified accusations and acting "belligerent." *Id.* Plaintiff believes that, after he reported the incident the next day, management retaliated against him because there was a toy rat hidden in his shoe when he arrived at work. *See id.* at 6. Plaintiff also alleges that someone drew an image of a knife on the wall across from his uniform closet. *See id.* Finally, Plaintiff states that the "president" laughed at and mocked him when he tried to report this continuing discriminatory conduct. *See id.* Plaintiff alleges that he was terminated on June 1, 2023, in retaliation for reporting the discriminatory treatment. *See id.*; *see also* ECF No. 32 ¶ 8.

## II.     Procedural History

On April 1, 2024, Plaintiff filed his complaint initiating this action. *See* ECF No. 1. Plaintiff requests punitive and compensatory damages for employment discrimination, unpaid wages, retaliation, and wrongful termination. *See id.* at 6. Plaintiff asserts that he has suffered physical and mental injuries as a result of the alleged discrimination and retaliation, including ulcerative colitis flare ups, stress, and paranoia, making it difficult for him to work. *See id.*

On October 1, 2024, Defendants moved to compel arbitration, claiming that Plaintiff is bound by a Collective Bargaining Agreement ("CBA") through his union membership with Local 32BJ of the Service Employees International Union (the "Union"). *See* ECF No. 26. On October 10, 2024, Plaintiff responded, challenging his membership to the Union and claiming that he never

paid union dues, received credentials, and did not benefit from the protections of the Union. *See* ECF No. 28 at 2. On October 29, 2024, Defendants submitted a reply brief disputing Plaintiff's claim that he was not a union member. *See* ECF No. 31. That same day, Plaintiff filed a letter stating that a Union representative confirmed that he was not on the roster. *See* ECF No. 33.

Plaintiff subsequently filed additional materials regarding his claims, lack of union membership, and attempts at settlement. *See* ECF Nos. 34–36, 38, 40. Defendants filed a response to these letters on March 14, 2025, asking the Court to disregard them as untimely. *See* ECF No. 37. Plaintiff wrote to the Court three days later, opposing Defendants' request.[1] *See* ECF No. 38. On June 25, 2025, Defendants requested leave to respond to Plaintiff's letters. *See* ECF No. 41.

**LEGAL STANDARDS**

I. **Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") "embodies a national policy favoring enforcement of arbitration agreements founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (internal quotation marks omitted). To decide whether to grant a motion to compel arbitration, courts use a standard comparable to summary judgment, interpreting reasonable inferences in favor of the non-moving party. *See Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 49 (2d Cir. 2022). "Because the standard is akin to that on summary judgment, materials outside the

---

[1] The Court will not consider Plaintiff's letters filed at ECF Nos. 34–36, 38, and 40 as they were untimely. The Second Circuit has made quite clear that "*pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." *Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) (quotation omitted). The Court finds Plaintiff made no admissions relevant to the disposition of the instant motion in these filings and therefore denies Defendants' request to take note of such.
    Considering the Plaintiff's *pro se* status, the Court finds a reasonable allowance should be made to accept the letter filed October 29, 2024 as a sur-reply. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006).

3

pleadings may be considered." *Lobban v. Cromwell Towers Apartments, Ltd. P'ship*, 345 F. Supp. 3d 334, 342 (S.D.N.Y. 2018).

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). Material facts are facts that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. An issue of fact is "genuine" when a reasonable fact finder can render a verdict in the nonmoving party's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003) (quoting *Marvel Characters v. Simon*, 310 F.3d 280, 285–86 (2d Cir. 2002)) (internal quotation marks omitted). If the moving party meets its burden, the burden shifts to the non-moving party to bring forward "specific facts showing a genuine issue for trial." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-7354, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016); *see also* Fed. R. Civ. P. 56(c). "On a motion for summary judgment, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Lobban*, 345 F. Supp. 3d at 342 (quoting *Anderson*, 477 U.S. at 255).

"[B]efore an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017). "This question is determined by state contract law." *Id.* Under New York law, courts must follow a two-step process before compelling arbitration. First, courts decide whether the parties formed a valid arbitration agreement, which requires mutual assent. *See Starke v.*

4

*SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019). Second, courts assess whether the dispute falls within the scope of the arbitration agreement. *See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003).

## II. *Pro Se* Pleadings

Courts are obligated to extend "special solicitude" to *pro se* plaintiffs when assessing their filings. *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)) (internal quotation marks omitted). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Thus, courts interpret *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474.

## DISSCUSION

To decide whether the CBA constitutes a valid arbitration agreement, the Court must decide whether Defendants satisfied their burden to establish Plaintiff's union membership. Only then may the Court turn to the scope of the agreement.

For a motion to compel arbitration, the movant bears the burden of showing the existence of a valid arbitration agreement. *See Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (citing *Rothstein v. Fung*, No. 03 Civ. 0674, 2004 WL 1151568, at *1 (S.D.N.Y. May 24, 2004)). The burden only requires proof of existence, not enforceability. *See id.* The movant can

meet this burden by presenting evidence such as an arbitration agreement that appears to bear the employee's signature, whether electronic or otherwise. *See Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45 (2d Cir. 2022). However, the FAA does not require the movant to produce a signed copy of the arbitration agreement; other forms of evidence, such as affidavits or records, can suffice to establish the existence of the agreement. *See Palmer v. Starbucks Corp.*, 735 F. Supp. 3d 407, 417 (S.D.N.Y. 2024).

Where the plaintiff is a union member, that union's agreement to arbitrate binds the member to arbitration, even if the plaintiff did not personally or explicitly consent to it. *See 14 Penn Plaza LLC v. Pyett*, 56 U.S. 247 (2009) (holding that members of a union are bound to collective bargaining agreements requiring them to arbitrate discrimination claims). Where in dispute, key evidence to establish union membership can include proof of dues payments, dues invoices, union-issued membership cards, and participation in union programs or benefits. *See Marcus v. Collins*, No. 16CV4221, 2016 WL 8201629, at *2 (S.D.N.Y. Dec. 30, 2016) ("Nor is there any evidence that Marcus paid Union dues through any other mechanism, or indeed that he was ever invoiced for Union dues, issued a Union membership card, or offered or enrolled in any Union programs or benefits."). Defendants may also provide "declarations or other admissible evidence from Union officials with knowledge of the organization's membership procedures in general or plaintiff's status in particular," to establish union membership. *Id.* at *8.

Additionally, where the language of a CBA explicitly stated that the union was "sole and exclusive bargaining agency for all" union employees of the defendant and the defendant offered proof of communications between the plaintiff and the union, union membership was established. *See Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 366 (S.D.N.Y. 2022), *aff'd*, No. 22-2917-CV, 2023 WL 7272062 (2d Cir. Nov. 3, 2023). In *Pena v. 220 East 197 Realty LLC*, the court

6

found that a CBA which represents the union has the power to negotiate on behalf of all employees—even non-union employees—was sufficient to apply its arbitration provisions. No. 20-CV-7039, 2021 WL 3146031, at *2–3 (S.D.N.Y. July 23, 2021). Specifically, the agreement stated that the union was the "sole and exclusive bargaining agent for all full and regular part-time employees," covering all employees, regardless of actual union membership. *Id.* at *3. This rendered an employee's awareness of their union membership or the terms of the CBA immaterial. *See id.* ("Pena's supposed lack of awareness is irrelevant.").

Defendants offer only selective portions of the CBA, none of which include an explicit statement that it is the Union was the sole and exclusive bargaining agent for all of the employees at 35 West 9th. *See* ECF No. 25-1. Nevertheless, in his affidavit, Joshua Holzer, Vice President of Maxwell-Kates, states that all the building's employees are unionized and, together with the building, bound by the CBA. *See* ECF No. 25 at ¶ 3; ECF No. 32 at ¶¶ 3–9. He further asserts that the employment portal shows a roster of all current and former Union employees, along with paperwork for new hires, invoices, and more. *See id.*, Ex. A–C. Defendants also provide Plaintiff's union-assigned Employee Identification Number. *See* ECF No. 31 at 2, Ex. B; ECF No. 26 at ¶ 7. While Defendants fail to produce any evidence that Plaintiff paid membership dues or participated in any union benefits, these exhibits and representations certainly raise indicia that Plaintiff was "was a Union member while employed." *See Marcus*, 2016 WL 8201629, at *9.

However, Plaintiff raises a genuine issue related to his membership in response to the motion. Plaintiff states that he "attempt[ed] to seek assistance from the union regarding the discrimination" and was denied help. *See* ECF No. 28 at 2. Additionally, Plaintiff alleges that when "[he] finally gained access to the union's office. . . a representative confirmed that [he] was not on the union's roster after [he] provided her with [his] personal information, including [his] social

7

security number, date of birth and place of employment." ECF No. 33. Construing Plaintiff's submissions liberally and understanding that no discovery has taken place in this matter, the Court finds these allegations sufficient to establish a genuine issue of material fact.

Considering that Defendants offer no evidence that the Union was the sole and exclusive bargaining agent on behalf of all union and non-union employes, *see Pena*, 2021 WL 3146031, at *3, this disputed issue as to Plaintiff's union membership defeats their motion. Accordingly, Defendants' motion to compel arbitration is **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to compel arbitration without prejudice. The Court **DENIES** Defendants' letter motion as moot. The Clerk of Court is respectfully directed to terminate the pending motions at ECF Nos. 24 and 41. This matter will be referred the Magistrate Judge Stewart D. Aaron for general pretrial matters in a separate order.

**SO ORDERED.**

**Dated: September 30, 2025**
   **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**