UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jhen P. Garcia,

                Plaintiff,

-against-

35 W. 9th Owners Co-op et al.,

                Defendants.

1:24-cv-02482 (ALC) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Jhen Garcia ("Plaintiff"), proceeding *pro se*, brings this action against 35 West 9th Street Owners Corp.[1] ("35 West 9th Street"), Maxwell-Kates, Arabella Bowen and Joshua Holzer (collectively, "Defendants") alleging claims of employment discrimination and retaliation pursuant to 42 U.S.C. § 1981 ("Section 1981"). (*See* Compl., ECF No. 1.) Now before the Court is a renewed motion by Defendants seeking to compel Plaintiff to arbitrate his claims and to stay this action pending arbitration.[2] (Defs.' 10/14/25 Not. of Mot., ECF No. 46.) For the reasons set forth below, Defendants' motion is GRANTED.[3]

---

[1] Plaintiff incorrectly named the corporate defendant as "35 West Owners Co-op." (*See* Holzer 10/1/24 Aff., ECF No. 25, ¶ 1.)

[2] As set forth below, Defendants' earlier motion seeking the same relief was denied without prejudice by District Judge Carter. *See Garcia v. 35 W. 9th Owners Co-op*, No. 24-CV-02482 (ALC), 2025 WL 2778933, at *4 (S.D.N.Y. Sept. 30, 2025).

[3] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." *McCants v. Team Elec., Inc.*, No. 19-CV-09565 (AJN) (RWL), 2021 WL 653122, at *1 n.1 (S.D.N.Y. Feb. 19, 2021) (quoting *Chen-Oster v. Goldman Sachs*, 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020)) (collecting cases).

**BACKGROUND**

**I.     Factual History**

The factual history underlying Plaintiff's allegations is set forth in Judge Carter's prior Opinion & Order. *See Garcia*, 2025 WL 2778933, at *1. In summary, Plaintiff, who worked as a doorman, alleges that he was treated unfavorably because of management's animus toward his Dominican heritage. *See id*.

**II.    Collective Bargaining Agreement**

During the period September 27, 2022 through June 1, 2023, Plaintiff worked as a doorman at a building located at 35 W. 9th Street. (*See* Compl. at 5; Holzer 10/24/25 Aff., ECF No. 48, ¶ 5.) The building is unionized and bound by the Collective Bargaining Agreement ("CBA") entered into with Local 32BJ of the Service Employees International Union (the "Union"), effective April 21, 2022 through April 20, 2026. (*See* Holzer 10/24/25 Aff., ¶ 6; CBA, ECF No. 48-3.) The CBA provides the following with respect to Union recognition:

> The Union is recognized as the exclusive collective bargaining representative of all classifications of service employees at each apartment building in New York City, Nassau, Suffolk, Duchess, Sullivan, Putnam, Rockland and Westchester counties in New York, Connecticut and New Jersey, which is committed to this Agreement.
>
> Work performed pursuant to the terms of this collective bargaining agreement shall not be performed by persons not covered by the bargaining agreement except as provided in Article II.[4]

(CBA, Art. I, ¶ 1, at 1.) The CBA also provides that it "shall apply to all classifications of service employees employed by the Employer." (*Id*., Art. I, ¶ 2, at 1.)

---

[4] Article II of the CBA addresses sub-contracting (*see* CBA, Art. II, at 10-11), and is not relevant here.

The CBA contains a grievance and arbitration procedure in Articles V and VI. (See CBA, Arts. V & VI, at 14-20.) Based upon the following terms of the CBA, discrimination-based claims must be brought pursuant to the grievance and arbitration procedure:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership, or any characteristic protected by law, including, but not limited to claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, 42 U.S.C. Section 1981, Family and Medical Leave Act, the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles and VI) as [the] sole and exclusive remedy for violations. . . .

(*Id.*, Art. XIX, ¶ 23, at 97-98.)

### III. Procedural History

On April 1, 2024, Plaintiff filed his Complaint initiating this action. (*See* Compl.) On October 1, 2024, Defendants moved to compel arbitration, claiming that Plaintiff was bound to arbitrate through his membership in the Union. (*See* Defs.' 10/1/24 Mem., ECF No. 26, at 3-5.) On October 10, 2024, Plaintiff responded, challenging his membership in the Union and claiming that he never paid union dues, never received credentials and did not benefit from the protections of the Union. (*See* Pl.'s 10/10/24 Opp., ECF No. 28, at 2.) On October 29, 2024, Defendants submitted a reply brief disputing Plaintiff's claim that he was not a union member. (*See* Defs.' 10/29/24 Reply, ECF No. 31, at 1-2.) That same day, Plaintiff filed a letter stating that a Union representative confirmed that he was not on the roster. (*See* Pl.'s 10/29/24 Ltr., ECF No. 33.)

On September 30, 2025, District Judge Carter denied without prejudice Defendants' motion to compel arbitration. *See Garcia*, 2025 WL 2778933, at *4. Judge Carter noted that

Defendants had "offer[ed] only selective portions of the CBA, none of which include[d] an explicit statement that . . . the Union was the sole and exclusive bargaining agent for all of the employees at 35 West 9th." *Id*. Judge Carter concluded that, "[c]onsidering that Defendants offer no evidence that the Union was the sole and exclusive bargaining agent on behalf of all union and non-union employes, . . . th[e] disputed issue as to Plaintiff's union membership defeats their motion." *Id*.

On October 14, 2025, Defendants filed their renewed motion to compel arbitration that now is before the Court. (*See* Defs.' 10/14/25 Not. of Mot.) In connection with their renewed motion, Defendants submitted the entire CBA, which included the provision that "[t]he Union is recognized as the exclusive collective bargaining representative of all classifications of service employees at each apartment building in New York City . . . ." (CBA, Art. I, ¶ 1, at 1.) On October 15, 2025, Plaintiff filed his opposition, arguing that Defendants' renewed motion was redundant of their first motion and that he was not a member of the Union. (Pl.'s 10/15/25 Opp., ECF No. 50, PDF pp. 1-2.) On October 29, 2025, Defendants filed their reply. (Defs.' 10/29/25 Reply, ECF No. 52.)

## LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006)). "Enacted to reverse centuries of judicial hostility to arbitration agreements, the FAA embodies the national policy favoring arbitration and places arbitration agreements on equal footing with

4

all other contracts[.]" *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 100 (S.D.N.Y. 2017) (citing *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 119 (2d Cir. 1991); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)) (internal quotation marks and alterations omitted); *see also Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution.").

Section 2 of the FAA provides, in relevant part, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation and compel arbitration." *McCants*, 2021 WL 653122, at *3 (citing FAA §§ 3, 4). "The party 'seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable . . . .'" *Fernandez v. Pinnacle Grp. NY LLC*, No. 21-CV-10702 (AT), 2023 WL 2525996, at *5 (S.D.N.Y. Mar. 15, 2023) (quoting *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010)).

"Where the plaintiff is a union member, that union's agreement to arbitrate binds the member to arbitration, even if the plaintiff did not personally or explicitly consent to it." *Garcia*, 2025 WL 2778933, at *3 (citing *14 Penn Plaza LLC v. Pyett*, 56 U.S. 247 (2009)). Additionally, as Judge Carter noted in his prior Opinion on Defendants' motion to compel arbitration, where the language of a CBA explicitly stated that the union was exclusive bargaining agent, courts have found non-union employees bound by the arbitration provisions of the CBA:

5

> In *Pena v. 220 East 197 Realty LLC*, the court found that a CBA which represents the union has the power to negotiate on behalf of all employees—even non-union employees—was sufficient to apply its arbitration provisions. No. 20-CV-7039, 2021 WL 3146031, at *2-3 (S.D.N.Y. July 23, 2021). Specifically, the agreement stated that the union was the "sole and exclusive bargaining agent for all full and regular part-time employees," covering all employees, regardless of actual union membership. *Id*. at *3. This rendered an employee's awareness of their union membership or the terms of the CBA immaterial. *See id*. ("Pena's supposed lack of awareness is irrelevant.").

*Id*. at *4.

"Collectively bargained agreements to arbitrate statutory discrimination claims must be 'clear and unmistakable.'" *Lawrence v. Sol G. Atlas Realty Co*., 841 F.3d 81, 82 (2d Cir. 2016) (quoting *Wright v. Universal Mar. Serv. Corp*., 525 U.S. 70, 80-81 (1998)). Federal statutory claims "may be made subject to arbitration[,]" *id*. at 83, "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (citations and internal quotation marks omitted); *accord Ragone*, 595 F.3d at 125 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 637 (1985)) ("A federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.' ").

"In deciding a motion to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment." *Cooper v. Ruane Cunniff & Goldfarb Inc*., 990 F.3d 173, 179-80 (2d Cir. 2021) (citing *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016)). "Courts must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together

6

with affidavits, and must draw all reasonable inferences in favor of the non-moving party." *Id*. at 180 (internal citation, quotation marks and alterations omitted); *see also Fernandez*, 2023 WL 2525996, at *5 ("When considering a motion to compel [arbitration], courts may consider materials outside the complaint, including the parties' CBAs.").

"Courts are obligated to extend 'special solicitude' to *pro se* plaintiffs when assessing their filings." *Garcia*, 2025 WL 2778933, at *3 (citation omitted).

## **ANALYSIS**

The Union entered into a valid arbitration agreement (*i.e.*, the CBA) with Defendants, Plaintiff's Section 1981 claims fall within its scope and Plaintiff is bound by that agreement. Thus, as explained below, Defendants' motion to compel arbitration is GRANTED.

In the present case, the CBA is a valid agreement, and Plaintiff does not contend otherwise. The inclusion of Section 1981 claims in the arbitration provision of the CBA is "clear and unmistakable." *See Lawrence*, 841 F.3d at 82. The CBA expressly provides that Section 1981 claims "shall be subject to the grievance and arbitration procedure (Articles and VI) as [the] sole and exclusive remedy for violations." (CBA, Art. XIX, ¶ 23, at 98.)

Plaintiff argues that he is not a member of the Union[5] and therefore that the CBA does not bind him. (Pl.'s 10/15/25 Opp. at PDF p. 2.) However, because the CBA provided that the Union was the "exclusive collective bargaining representative of all classifications of service employees at each apartment building in New York City" (CBA, Art. I, ¶ 1, at 1), the CBA is binding on Plaintiff regardless of any actual Union membership. See *Pena*, 2021 WL 3146031, at *3 ("Even

---

[5] The Court notes that Defendants have submitted evidence to show that Plaintiff in fact was a member of the Union. (*See, e.g.*, Holzer 10/24/25 Aff. ¶ 12; Ex. E to Holzer 10/24/25 Aff., ECF No. 48-5.)

7

if [plaintiff] was not a member of the union at all — a fact that is never established definitively — the union was legally authorized to negotiate collective bargaining agreements on his behalf.").

In the circumstances presented, Plaintiff must arbitrate his claims in accordance with the procedure set forth in the CBA. If hereafter Plaintiff follows the procedure set forth in the CBA and is unable to vindicate his statutory claims in the arbitral forum, he may seek redress from the Court. *See Molina v. Harvard Maint.*, No. 20-CV-10993 (LGS), 2021 WL 5281098, at *4 (S.D.N.Y. Nov. 11, 2021) ("If Plaintiff wishes to proceed with her claims, she is directed to submit to the grievance and arbitration procedures contemplated by . . . the CBA. If Plaintiff finds that she is precluded from submitting her claims to arbitration, Plaintiff may seek further redress from this Court."); *Borrero v. Ruppert Hous. Co.*, No. 08-CV-05869 (HB), 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009) ("Should [plaintiff's] attempts to arbitrate his claims be thwarted by the Union, the CBA will have operated as a 'substantive waiver' of his statutorily created rights and he will have the right to re-file his claims in federal court." (citation omitted)).

Accordingly, the Court hereby stays this action in favor of arbitration. *See Chung v. 335 Madison Ave. LLC*, No. 21-CV-03861 (LJL), 2021 WL 4710483, at *4 (S.D.N.Y. Oct. 7, 2021) ("courts in this Circuit regularly stay, rather than dismiss, complaints subject to an arbitration agreement").

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to compel arbitration is GRANTED and this case is STAYED. Plaintiff is directed to submit to the grievance and arbitration procedure set forth in Articles V and VI of the CBA. If Plaintiff finds that he is precluded from submitting his claims to arbitration, he may seek further redress from the Court. Sixty days after the date of this

Opinion and Order, and every sixty days thereafter, the parties shall file a joint letter apprising the Court of the status of any arbitration. The parties are directed to inform the Court promptly of any resolution of the arbitration proceedings or any other event that would affect the stay of this case.

**SO ORDERED.**

Dated:   New York, New York
         October 31, 2025

_____
STEWART D. AARON
United States Magistrate Judge